## FRIDLEY RECREATION & SERVICE COMPANY v. COMMISSIONER OF TAXATION.

194 N. W. 2d 584.

February 11, 1972—No. 42826.

*Sigal & Savelkoul* and *Donald C. Savelkoul,* for relator.

*Warren Spannaus,* Attorney General, and *Ronald S. London,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Kelly, JJ.

KELLY, JUSTICE.

Certiorari to review a decision of the Tax Court holding that the Minnesota sales tax is applicable to the fees paid for bowling and to receipts from the sale of bowling shoes. We affirm.

Taxpayer, Fridley Recreation & Service Company, is a Minnesota corporation operating a bowling center in Fridley, Minnesota. Taxpayer's establishment includes 32 bowling lanes with automatic pin setters and a snack bar or cafe which sells a limited menu of food, soft drinks, set-ups, and beer. The lanes are

used for both league and open bowling. There is no admission charge to enter the establishment.

On October 7, 1968, the commissioner of taxation issued an order assessing an additional sales tax against taxpayer, based on the inclusion of gross receipts from bowling fees and bowling shoe sales which the taxpayer had failed to include in its gross receipts for the period from August to December, 1967. Taxpayer appealed to the Tax Court from that order, contending that those receipts were not taxable. The Tax Court upheld the commissioner, and taxpayer petitioned for a writ of certiorari to review that decision. Minn. St. 1969, § 271.10.

Three issues are before this court: (1) Whether fees charged bowlers for the privilege of using bowling alleys are subject to the sales tax within the meaning of Minn. St. 1969, § 297A.01, subd. 3(d); (2) whether a sales tax on those fees violates the United States Constitution or the Minnesota Constitution; and (3) whether the sale of bowling shoes is subject to a sales tax. The Tax Court held in the affirmative on (1) and (3) and implicitly held in the negative on (2). We affirm.

By statute in Minnesota it is provided (Minn. St. 1969, § 297A.02):

"There is hereby imposed an excise tax of three percent of the gross receipts of any person from sales at retail, as hereinbefore defined, made in this state after July 31, 1967."

Minn. St. 1969, § 297A.01, subd. 3(d), provides:

"A 'sale' and a 'purchase' includes, but is not limited to, each of the following transactions:

\* \* \* \* \*

"(d) The granting of the privilege of admission to places of amusement or athletic events and the privilege of use of amusement devices."[1]

---

[1] Amendments to Minn. St. 1969, c. 297A, by Ex. Sess. L. 1971, c. 31, do not affect the result herein.

Taxpayer asserts that the "admission" portion of subd. 3(d) refers only to places of amusement or athletic events to which a ticket is the means of admission.

It was the position of the Tax Court, and it is the position which the commissioner emphasized before this court, that the fees paid for bowling are an "admission" charge. The Tax Court summarized the state's position when it said:

"* * * It is our finding that the fee paid for the privilege of bowling is clearly an admission charge. To be an admission charge it is not necessary that there be a clearly defined gate beyond which no one may go. It is merely necessary that there be some clearly defined point beyond which a charge will be imposed. In bowling, that point is the act of participation in the sport of bowling.

"Webster's Dictionary defines the word 'admission' as follows:

" 'The action of admitting or the fact of being admitted or received, especially into a position or class, a privileged group, or the like; the right to enter a place or school, into society, etc; entrance; access.' "

In support of this position the state cites Telemark Co. Inc. v. Wisconsin Dept. of Taxation, 28 Wis. 2d 637, 137 N. W. 2d 407 (1965). The breadth of the Wisconsin tax statute, now Wis. Stat. 1969, § 77.52(2)(a)2, distinguishes that case from ours. As that court itself said regarding the Wisconsin statute[2] (28 Wis. 2d 637, 641, 137 N. W. 2d 407, 409):

"* * * It is apparent sec. 77.52 (2) (a) 2 is more extensive than a strict admission-tax statute * * *."

---

[2] Wis. Stat. 1969, § 77.52(2)(a)2, provides: "The tax imposed herein applies to the following types of services: The sale of admissions to places of amusement, athletic entertainment or recreational events or places and the furnishing, for dues, fees or other considerations, the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic or recreational devices or facilities."

The admission portion of the Minnesota statute in question imposes a tax only on an "admission to places." This phrase is much more restrictive than the word "admission" standing alone. However, the legislature must have intended a broad interpretation since the transaction described as an "admission to places" is preceded by the words we previously quoted: "A 'sale' and a 'purchase' includes, but is *not limited* to, each of the following transactions." (Italics supplied.) The payment of a bowling fee is a transaction, and if the sales tax is not limited to an "admission to places," it might well be taxable. We need not so decide because we conclude that bowling fees are taxable in any event, as fees paid for the privilege of using an "amusement device."

Taxpayer further contends that bowling is not included within the statutory purview of the "privilege of use of amusement devices" (§ 297A.01, subd. 3[d]) because it involves no "amusement device." Citing Webster's Third New International Dictionary, Unabridged,[3] taxpayer attacks the inability of the state to point to any device in a popular or technical sense which would be taxable under the statute. Taxpayer would classify a roller-coaster or pinball machine as an "amusement device."

The state counters that the Tax Court was correct in upholding the commissioner's reliance on the phrase "amusement device" as including the bowling lane, approach area, and all mechanical equipment. The state feels that the words "amusement" and "device" in their ordinary and popular sense convey a meaning which undeniably encompasses bowling.

While this matter is not entirely free from doubt, we accept the state's contention and conclude that a bowling lane, approach

---

[3] Among other definitions for the word "device," that dictionary includes (p. 618): "1: something that is formed or formulated by design [usually] with consideration of possible alternatives, experiment, and testing: something devised or contrived * * * (e): a piece of equipment or a mechanism designed to serve a special purpose or perform a special function (a [device] for measuring heat release) * * * (an improved steering [device])."

area, and the mechanical equipment involved constitute an amusement device.

The next issue to be considered is taxpayer's contention that the Tax Reform and Relief Act of 1967, as applied to him, is unconstitutional as a denial of equal protection in violation of the Fourteenth Amendment and as a violation of Minn. Const. art. 9, § 1, which decrees that "[t]axes shall be uniform upon the same class of subjects."

Taxpayer argues specifically that there is no reasonable basis for the legislature's granting an exemption to most, if not all, other businesses on either inventory or machinery and failing to provide such relief to bowling establishments. Taxpayer's brief best summarizes this contention as follows:

"* * * To exempt completely the personal property of one business and then give no relief to another business is a denial of the equal protection of the laws and the requirement of uniformity."

We agree with the state's contention that the constitutionality of the tax exemptions granted under the Tax Reform and Relief Act of 1967 is not (directly) before the court at this time. While it is true that the exemption provisions of § 272.02(11)(b) and the sales and use tax were both part of the act, that fact alone does not necessarily indicate that the exemptions and the newly levied taxes were in a tit-for-tat relationship. Absent such a relationship, we feel that either portion of the act stands or falls constitutionally on its own reasonableness of classification. In that posture, only the taxing provisions are now before us, and taxpayer has not challenged their reasonableness.

With respect to the final issue, the state predicates taxpayer's liability for a tax on the sale of bowling shoes on Minn. St. 1969, § 297A.25, subd. 1(g), and an interpretive memorandum issued by the commissioner of taxation. The Tax Court agreed.

Section 297A.25, subd. 1(g), exempts from the operation of the sales tax "[T]he gross receipts from the sale of clothing and

wearing apparel * * *." (The exceptions to this exemption are not applicable here.) The Department of Taxation has issued a department ruling which provided in part:

"Shoes, uniforms and other apparel designed to provide special protection, support, traction or identification in the performance of athletic activity are classified as equipment and are taxable."

Taxpayer contends that there is no statutory basis for the distinction made by the commissioner's ruling. He asserts that the enumeration of some articles as exceptions to the clothing exemption is strong evidence of a legislative intent to extend the exemption to athletic clothing. See, Minn. St. 645.19; The Maytag Co. v. Commr. of Taxation, 218 Minn. 460, 17 N. W. 2d 37 (1944). To bolster its argument, taxpayer points out that the commissioner has construed the statute to exempt bowling shirts.

The state contends that bowling shoes, like other items of athletic equipment, are designed specially to improve certain skills (here, bowling) and, as such, do not fall within the category of clothing as that word is used in its popular sense.

We accept the conclusion that bowling shoes are not included within the clothing exemption, but we do not base that conclusion on the state's reasoning. In essence the state argues, as it must to be consistent with the wording of its ruling, that the usage for which apparel is designed is conclusive as to whether such an item qualifies for exemption. In this particular area it makes more sense to inquire as to the usage to which apparel is actually put to determine what is and is not exempt. The commissioner has recognized the validity of this approach in another portion of the ruling above quoted wherein he states:

"Special clothing or safety clothing necessary for the daily work of the user shall be considered clothing and footwear."

Thus, certain items of wearing apparel which may not be exempt otherwise are exempt if "necessary for the daily work of the user." An example of an article which arguably is exempt under

this language is golf shoes sold to a professional golfer.[4] On the other hand, under the previously quoted portion of the commissioner's ruling relating to articles used in athletic activities, golf shoes sold to a professional golfer might be considered equipment and therefore taxable. The exempt status of tennis shoes under the law seems a further example of application of the test we now apply, for it is doubtless true that tennis shoes were designed for other than that everyday usage which has resulted in tax-exempt status.

Applying the "usage" test in this case, we hold that bowling shoes are not clothing within the statutory exemption. Although the taxpayer asserts otherwise, it has shown no evidence, and it is not our common experience, that bowling shoes are used for everyday purposes to any appreciable extent. Accordingly, the Tax Court's decision must be affirmed.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[4] This is not to say that articles such as golf shoes may not also be exempt under the test we herein utilize. Thus, golf shoes without spikes but with composition soles suitable for golf and everyday wear much the same as tennis shoes might be exempt.