# NORTHLAND COUNTRY CLUB v. COMMISSIONER OF TAXATION.

241 N. W. 2d 806.

April 30, 1976—No. 45740.

*Warren Spannaus,* Attorney General, and *Richard W. Davis,* Special Assistant Attorney General, for appellant.

*Hanft, Fride, O'Brien & Harries* and *Gaylord W. Swelbar,* for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

The commissioner of taxation [1] challenges a determination by the district court that annual membership dues collected by Northland Country Club, Duluth, were not subject to the Minnesota sales and use tax. We affirm.

The relevant facts were stipulated by the parties and may be succinctly stated. Northland is a private country club providing social as well as other activities for its members. Northland's varied social activities include holiday parties, snowmobile parties, parties relating to sponsored events, and bridge luncheons. Northland's facilities include a regulation golf course, a swim-

---

[1] Now commissioner of revenue. Minn. St. 270.02, subd. 1.

ming pool, tennis courts, and clubhouse with locker and shower facilities, meeting rooms, a ballroom, bars, and dining rooms.

The length of time during which the golf course can be used is approximately 6 months out of each year, with scheduled golf events running from May 15 to September 15; in 1970, approximately 27 percent of Northland's operating expenses were for the golf course. Of Northland's total membership, approximately 54 percent do not play golf at all, approximately 24 percent play golf at least once a week, and approximately 22 percent play golf less than once a week.

All members of Northland must pay the same annual membership dues. These dues entitle the members to use all of the facilities, and there are no separate or additional charges for the use of any of the facilities; but a member cannot use any of the facilities without paying the required dues. Many of Northland's members belong to the club only for the purpose of being able to attend social functions conducted at the club. Many of Northland's members belong to the club strictly for the purpose of entertaining business clientele and never use the facilities or attend social functions except for business reasons.

Northland collected from its members and remitted to the state the 3-percent sales tax on dues and initiation fees, for the period January 1968 through November 1970, taxes totaling $15,320.61. Northland timely filed claims for a refund of the sales tax collected and remitted on those dues and initiation fees. The commissioner determined that the initiation fees were not subject to the sales tax, so he allowed Northland an offset of $686.01 against taxes paid. Therefore, the correct refund, if allowed, would be $14,634.60.

The commissioner contends that Northland's annual membership dues are subject to the Minnesota sales tax pursuant to Minn. St. 297A.01, subd. 3, which provides, in part:

"A 'sale' and a 'purchase' includes, but is not limited to, each of the following transactions:

* * * * *

"(d) The granting of the privilege of admission to places of amusement or athletic events and the privilege of use of amusement devices."

The commissioner asserts that Northland's membership dues constitute a charge for "the privilege of admission to [a place] of amusement" or a charge for "the privilege of use of amusement devices" within the meaning of this provision. We do not agree with the commissioner's interpretation of Minn. St. 297A.01, subd. 3(d).

The general principle for interpretation of any tax statute was stated in the case of Charles W. Sexton Co. v. Hatfield, 263 Minn. 187, 195, 116 N. W. 2d 574, 580 (1962):

"* * * [W]here the meaning of a taxing statute is doubtful, the doubt must be resolved in favor of the taxpayer. We are not permitted to extend the scope of a tax-levying statute beyond the clear meaning of the language used."

While the commissioner's interpretation of Minn. St. 297A.01, subd. 3(d), may be a rational one, the precise meaning which the legislature intended to convey through several crucial but undefined terms in this section is sufficiently doubtful to invoke that principle of interpretation in favor of the taxpayer.

We turn to a consideration of four arguments of the commissioner in support of his interpretation of § 297A.01, subd. 3(d). He contends, first, that membership dues are payments for "the privilege of *use of amusement devices*." We have been called upon to interpret Minn. St. 297A.01, subd. 3(d), in only one prior case, Fridley Recreation & Service Co. v. Commr. of Taxation, 292 Minn. 260, 194 N. W. 2d 584 (1972). We there affirmed a decision of the Tax Court holding that statute applicable to fees paid for bowling at a bowling center. Although the Tax Court had determined the fee to comply with both prongs of subd. 3(d), as being for the privilege both "of admission to places of amusement" and "of use of amusement devices," our affirmance was based only on the latter clause.

Similarly, the sole Tax Court decision construing Minn. St. 297A.01, subd. 3(d), subsequent to Fridley Recreation was based on a finding that the charges there involved—fees for participating in bingo games—were paid "for the privilege of use of amusement devices." South Robert Street Businessmen's Town Social Club v. Commissioner, Minn. Tax Ct., Docket No. 1572, June 21, 1972.

The instant case is distinguishable from both of these earlier cases: The fees in South Robert Street were specifically paid for use of the "amusement devices" involved; and in Fridley Recreation there was no charge for mere entrance to the establishment in which the bowling facilities were located, but only charges specifically designated for the privilege of using such facilities. Here, however, while an individual may not use the club's facilities (assuming, arguendo, that facilities such as tennis courts, golf courses, and swimming pools are "amusement devices") without paying the contested dues, an individual may pay such dues and never avail himself of any of these devices. Indeed, as the parties stipulated, the majority of the club's members do not play golf at all and may belong to the club solely to attend its social functions or to entertain business clientele. The commissioner has admittedly never interpreted Minn. St. 297A.01, subd. 3(d), as being applicable to the annual membership dues of social clubs or fraternal organizations.

The commissioner contends, second, that membership dues are payments for "the privilege of *admission to places of amusement.*" In declining to rule in Fridley Recreation on the question whether bowling fees are for "admission to places of amusement," we noted: "The admission portion of the Minnesota statute in question imposes a tax only on an 'admission to places.' This phrase is much more restrictive than the word 'admission' standing alone." 292 Minn. 263, 194 N. W. 2d 586. In accordance with this observation, it is reasonably arguable that dues paid by Northland's members are for admission to membership and not for "admission to places." Dues paid to a club or other organiza-

tion are sums paid toward the support of the society and to retain membership therein. They are the obligation into which members enter to pay a sum to be fixed, usually by by-laws, at recurring intervals, for the maintenance of the organization. The commissioner determined that Northland's *initiation* fees fall outside the reach of Minn. St. 297A.01, subd. 3(d), presumably on the ground that such fees are paid for admission to membership; it is difficult to distinguish initiation fees from *membership* dues on this basis since the latter are paid for the maintenance of membership.

The commissioner's third contention is that country club facilities are *"amusement devices."* Although we held in Fridley Recreation that a bowling lane and associated equipment constitute an amusement device, such conclusion was phrased in cautious language: "While this matter is not entirely free from doubt, we accept the state's contention * * *." 292 Minn. 263, 194 N. W. 2d 587. The Tax Court followed this holding in the South Robert Street case, ruling that the tables, chairs, room area, cards, and other equipment used in a bingo game constitute an amusement device. However, Black, Law Dictionary (4 ed.) p. 538, defines "device" as "[a]n invention or contrivance," and it seems a much greater strain of this definition to include real property thereunder than it does to include the bowling and bingo equipment involved in these earlier cases. All of the club facilities which the commissioner contends are amusement devices, with the exception of flagsticks and tennis court nets, are real property. If, as we stated in Fridley Recreation, it is doubtful that a bowling lane with all of its attendant "contrivances" constitutes an "amusement device," then the question whether tennis courts, swimming pools, and golf courses so qualify is a fortiori subject to greater doubt.

The commissioner's final contention is that country clubs are *"places of amusement."* We have not had occasion to construe the term "places of amusement" in any previous case. The commissioner argues that a commonsense or dictionary definition

of "amusement" is sufficiently broad that a country club clearly qualifies as a "place of amusement." On the other hand, Northland urges a narrower definition of "amusement," one distinguishing it from social and recreational activity. This reading is supported by contrasting the Minnesota statutory language at issue with language in other states' sales tax statutes which make separate reference to social clubs, recreational activities, and places of amusement and therefore do not include either social clubs or recreational activities within the scope of "places of amusement." Wisconsin's tax statute is illustrative. Wis. Stat. 1973, § 77.52(2), provides, in part:

"(a) The tax imposed herein applies to the following types of services:

\* \* \* \* \*

2. The sale of admissions to *places of amusement,* athletic entertainment or *recreational events or places* \* \* \* and the furnishing, for dues, fees and other considerations, the privilege of *access to clubs* or the privilege of having access to or the *use of amusement,* entertainment, athletic or *recreational* devices or facilities." (Italics supplied.)

Another compelling indication that the imposition of a tax on admissions to places of amusement does not per se constitute a tax on country club membership dues is found in the Internal Revenue Code. Prior to its repeal in 1965,[2] C. 33, Subc. A, of the 1954 Internal Revenue Code imposed a tax on admissions, 26 USCA, §§ 4231 to 4234, and also, in separate sections, on certain dues and initiation fees, 26 USCA, §§ 4241 to 4243. The Congress presumably concluded that the latter were not subsumed within the former, or it would not have enacted entirely different sections of the code referring thereto.

These statutes from other jurisdictions, with their separate and specific references to country club membership dues, were available as models to our legislature when it drafted the Minne-

---

[2] P. L. 89-44, Tit. III, § 301, 79 Stat. 145.

sota sales and use tax act. Since the legislature could readily have subjected these dues to the sales tax by adding a single phrase to the statute, as other jurisdictions have done, we presume that the omission was deliberate. As we stated in Wallace v. Commissioner of Taxation, 289 Minn. 220, 230, 184 N. W. 2d 588, 594 (1971), in construing a tax statute, "courts cannot supply that which the legislature purposely omits or inadvertently overlooks."

We conclude, therefore, that substantial doubts exist as to the application of Minn. St. 297A.01, subd. 3(d), to these membership dues. To hold that it applies to annual membership dues collected by Northland would extend the scope of the tax statute beyond the clear meaning of the language used, in contravention of well-established principles governing judicial construction of tax-levying acts.

Affirmed.