Thomas M. WILLMUS as Trustee of the Geraldine Willmus Trust for the Benefit of John WILLMUS, Rose M. Willmus, Mark T. Willmus, Relator,

v.

COMMISSIONER OF REVENUE, Respondent.

No. C9–84–586.

Supreme Court of Minnesota.

July 19, 1985.

William R. Busch, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., James W. Neher, Asst. Dept. of Rev., St. Paul, for respondent.

## OPINION

WAHL, Justice.

The taxpayer-relators in this case appeal by certiorari a decision of the Tax Court

affirming orders by the Commissioner of Revenue assessing 1979 Minnesota minimum tax on their capital gain deductions, pursuant to Minn.Stat. § 290.091 (Supp. 1979). We affirm.

Minn.Stat. § 290.091 (Supp.1979), the provision governing liability for state minimum tax on capital gains deductions, measures that liability as a percentage of the taxpayers' federal liability for preference items, including capital gain deductions, under analogous provisions of the Internal Revenue Code (hereinafter the Code). For the year 1979, the state statute provided in relevant part:

290.091 **Minnesota tax on preference items.**

(a) In addition to all other taxes imposed by this chapter there is hereby imposed, a tax which, in the case of a resident individual, estate or trust, shall be equal to 40 percent of the amount of the taxpayer's minimum tax liability for tax preference items pursuant to the provisions of sections 56 to 58 and 443(d) of the Internal Revenue Code of 1954 as amended through December 31, 1976 * *.

Minn.Stat. § 290.091 (Supp.1979). To determine the amount owed in state minimum tax, a taxpayer simply multiplied his or her federal liability under section 56 by 40 percent. Prior to 1979, these taxpayers' federal minimum tax liability arose pursuant to section 56 of the Code. In 1978, however, the federal Code was amended to provide that these taxpayers' federal obligation for minimum tax would arise thereafter under section 55 of the Code rather than under section 56. In response to the federal amendment, the commissioner promulgated new instructions for computing state minimum tax. Schedule M–1MT to Instructions (1979). Under the revised computation method, the minimum state tax would be a figure equal to 40 percent of a taxpayer's federal minimum tax liability had capital gain items subject to section 55 treatment been included in the calculation of section 56 liability.

These taxpayer-relators declined to follow the commissioner's new instructions for computing their state minimum tax. They paid no minimum tax at all for 1979, although they each claimed net capital gain deductions totaling $147,222 on their federal returns. The commissioner then assessed the taxpayers' delinquent tax and interest for that year in conformity with the commissioner's calculation method. The taxpayers appealed these assessments to the Tax Court, arguing that since they had no federal minimum tax liability for 1979 arising under section 56 of the Code, no state minimum tax pursuant to section 290.091 could be assessed against them. To affirm the commissioner's order, they contended, would be contrary to the statute's express language and would permit the commissioner to "fill gaps" in the statute, thereby exceeding the scope of the commissioner's administrative authority.

The Tax Court rejected these arguments, holding that section 290.091 requires the 1979 state minimum tax on tax preference items to be computed pursuant to sections 56 to 58 of the Code as amended through December 31, 1976, and that the commissioner's assessment was proper under the statute. The Tax Court further held that the commissioner's computation method served only to simplify the computation and did not constitute impermissible administrative legislation by the commissioner. This appeal followed.

■ 1. The taxpayers argue that the commissioner's assessment was improper under the statute. They first contend that the plain language of section 290.091 compels the conclusion that state minimum tax may be assessed against them only if they actually had a federal minimum tax liability for 1979 pursuant to sections 56 to 58 of the Code. It is axiomatic that when the language of a taxing statute is clear and unambiguous, the court may not engage in further construction of its intended meaning. *Northland Country Club v. Commissioner of Taxation*, 308 Minn. 265, 241 N.W.2d 806, 807 (1976); *Charles W. Sexton Co. v. Hatfield*, 263 Minn. 187, 195, 116

N.W.2d 574, 580 (1962). The taxpayers argue that the term "liability" plainly contemplates that a taxpayer actually owe federal tax pursuant to sections 56 through 58 before any liability under section 290.091 may attach. They rely on the Webster's dictionary definition of "liability" as "an amount that is *owed* whether payable in money, other property, or services." Webster's Third International Dictionary (1969) (emphasis added). Since the appellants paid taxes on their capital gains only under section 55 of the Code, they conclude that they were relieved of any liability under section 290.091.

■ We do not find the taxpayers' suggested "plain meaning" of the term persuasive. The commissioner and the tax court defined the phrase "liability under sections 56 to 58" as connoting a method of computing a figure on which to base the calculation of the state minimum tax. Under this view of the statutory language, a taxpayer's "liability" for federal minimum tax is the "amount owed" as reflected on the taxpayer's computation schedule for calculating federal minimum tax under section 56, not an amount actually paid out. This construction is consistent with the corollary rule of construction that a statute is to be construed as a whole so as to harmonize and give effect to all of its parts. *Anderson v. Commissioner of Taxation*, 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1958). As the Tax Court noted, the taxpayer's construction of the term "liability" effectively extinguishes the statutory language providing that a taxpayer's federal liability be computed pursuant to the Code "as amended through December 31, 1976." We find the commissioner's definition of "liability" the more persuasive since it both gives effect to the language reciting the controlling Code provisions, and more adequately reflects the intent of the legislature to assess a tax on preference items.[1]

■ Construing "liability" to mean an amount actually owing to the federal government would be a plausible interpretation if the legislature could determine that the statute be self-amending, such that the federal provisions effective for the relevant tax year control. Absent affirmative action by the legislature, however, amendments in federal law are of no effect on state statutory provisions. *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 184 N.W.2d 588 (1971); *Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779, 784 (Minn.1981). In *Wallace* we recognized the principle that the legislature could not grant to Congress the right to make future modifications or changes in Minnesota law. *Wallace*, 289 Minn. at 228, 184 N.W.2d at 593.

■ This case falls squarely within the rationale set forth in *Wallace* for imposing this restriction on legislative delegation of responsibility for establishing state tax policies. We noted that such restrictions were particularly necessary in the area of the tax treatment of capital gain, the item at issue here.

> The same political and social considerations which are of significance to the Federal tax policy are not necessarily of significance to the state's tax collection scheme. Federal provisions with respect to long-term capital gains exclusion, as well as depletion allowances, are continually the subject of controversy. Any and all of these provisions, as well as others, may be changed at any time by

---

1. The taxpayers also cite numerous provisions of the revenue statute, including Minn.Stat. §§ 290.01, subd. 20(a)(8); 290.01, subd. 20(b)(7); 290.10(9); 290.04, and 290.54 (1980), which, they claim, all use the term "liability" to mean "precisely and only the amount of tax actually *owed* by the taxpayer and not some hypothetical tax calculation." They contend that such uniform usage shows a legislative intent that the term "liability" be similarly construed for the purpose of interpreting section 290.091. We fail to grasp, though, how the term "liability" as employed in these provisions refers any more persuasively to an amount actually paid out than the term as used in section 290.091. In any event, to hold the legislature accountable to such a minute standard of consistency would be to engage in the "process of etymological dissection" this court has rejected as an inappropriate method of statutory construction. *Village of Aurora v. Commissioner of Taxation*, 217 Minn. 64, 14 N.W.2d 292 (1944).

the Congress of the United States—without consulting the Minnesota Legislature. * * * [C]hanges in the foreign legislation may not fit the policy of the incorporating legislature and the person subjected to the changed law would be denied the benefit of the considered judgment of his legislature on the matter. *Wallace*, 289 Minn. at 225–26, 184 N.W.2d at 591. Thus, we may not conclude that section 290.091 automatically incorporated the 1978 amendments to the federal code such that these taxpayers' capital gain deductions are immune from state minimum tax.

■ Nor do we conclude, as the taxpayers argue we must, that the legislature, by failing to amend section 290.091 to reflect the 1978 federal amendments left a gap in the statute with respect to these taxpayers' section 55 liabilities which this court is powerless to fill. The taxpayers rely for this proposition on *Northland Country Club v. Commissioner of Taxation*, 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976), where we stated:

> Since the legislature could readily have subjected * * * [the items] to the * * * tax by adding a single phrase to the statute, as other jurisdictions have done, we presume that the omission was deliberate. As we stated in *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971), in construing a tax statute, "courts cannot supply that which the legislature purposely omits or inadvertently overlooks."

In 1980, section 290.091 was amended to reach federal liabilities arising under section 55, and expressly incorporated the 1978 federal amendments. 1980 Minn. Laws ch. 607, art. I § 15. While these changes were minor, we cannot presume, as we did in *Northland*, that the legislature's failure to so amend the statute prior to 1980 expressed an intent to immunize these items from state minimum tax liability. In 1979, the legislature added new subsection (c) to the provision which read: "The preference items for taxable years beginning after December 31, 1978 shall

not include the portion of the sale of residence excluded under section 121 of the Internal Revenue Code of 1954 as amended through December 31, 1978." 1979 Minn. Laws ch. 303, art. I § 15; Minn.Stat. § 290.091, subd. (c) (1979). With this amendment, the legislature expressly and selectively incorporated provisions of the Federal Revenue Act of 1978. At the same time, the reference to the 1976 Code for calculating the amount of the minimum tax on preference items was left unchanged. This inconsistency gives rise to a fair inference that the legislature retained the reference to the 1976 Code believing that the federal scheme provided only a computation method, and that it did not need to further incorporate the federal changes to effect the purposes of the provision. Viewed against this background, the adoption of the federal amendments in 1980 could plausibly mean that the legislature was making its intent more explicit, not that it was changing its intent. *See Owens v. Federated Mutual Implement and Hardware Insurance Co.*, 328 N.W.2d 162, 164 (Minn.1983).

More importantly, however, the taxpayers' argument here assumes the conclusion that the statute contains such a fatal gap on its face. For such a gap to exist, we must accept the taxpayers' premise that the term "liability" means an amount actually paid out to the federal government. Since we reject that premise, we must conclude that no gap in the statute exists. We hold that the commissioner correctly determined that the taxpayers' 1979 minimum tax on preference items was to be computed pursuant to the provisions of section 56 of the Internal Revenue Code of 1954 as amended through December 31, 1976.

■ 2. The taxpayers further argue that the commissioner exceeded his authority by construing section 290.091 to reach their section 55 preference items and promulgating a schedule for calculation of state minimum tax consistent with that construction. Since we have concluded that the commissioner's construction of the statute was correct, this argument need

not detain us. The commissioner has discretion to execute and administer the law, and clearly no abuse of that discretion has occurred here.

■ 3. Finally, the taxpayers urge this court, if we find, as we do, that their preference items are subject to minimum tax under section 290.091, that their liability be computed based on their actual section 55 liability under the 1978 Code rather than on the rate set forth in section 56 of the 1976 Code. This method of computation would reduce the amount of their state minimum tax substantially. The taxpayers' calculations indicate that Thomas Willmus' assessment would be reduced from $6,361 to $76.80; Rose Willmus' from $6,531 to $1,088, and Mark Willmus' from $6,019 to $117.20. The taxpayers, however, suggest no construction of the statutory language supporting this result, nor do we discern one. Moreover, their proposed application of the statute would require us to interpret section 290.091 as automatically incorporating the federal amendments by interpolating section 55 by reference into the provision. This method of construction, held impermissible in *Wallace,* is equally untenable here. The commissioner properly based calculation of the taxpayer's 1979 minimum tax on preference items subject to section 55 treatment on the rate set forth under section 56 of the Internal Revenue Code as amended through December 31, 1976. We therefore affirm the decision of the Tax Court in all respects.

Affirmed.