STATE OF MINNESOTA

IN SUPREME COURT

A13-1189

Court of Appeals                                               Wright, J.
                                           Dissenting, Gildea, C.J. and Anderson, J.
                                                         Dissenting, Page, J.

State of Minnesota,

                              Respondent,

vs.                                                        Filed: July 1, 2015
                                                      Office of Appellate Courts

Brandon Wayne Riggs,

                              Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Karin Sonneman, Winona County Attorney, Christina M. Davenport, Assistant Winona
County Attorney, Winona, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie Willett, Assistant Public
Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Minnesota Statutes § 611A.045, subd. 1 (2014), provides an exclusive list

of factors for determining the amount of restitution to award.

2.      Because the victim's role as the initial aggressor is not a factor set forth in

Minn. Stat. § 611A.045, subd. 1, the district court erred by reducing the restitution award

on this ground.

1

Affirmed.

O P I N I O N

WRIGHT, Justice.

In this case, we consider whether Minn. Stat. § 611A.045, subd. 1 (2014), provides an exclusive list of factors for a district court to consider when determining the amount of restitution to award to a crime victim. Concluding that the language of section 611A.045, subdivision 1, does not prohibit consideration of the victim's fault, the district court awarded the victim only half of the employment-related expenses that he sought because the victim was the initial aggressor. The court of appeals reversed, and we granted review. Because section 611A.045, subdivision 1, provides an exclusive list of factors for determining the amount of restitution to award, we affirm the decision of the court of appeals.

I.

Brandon Wayne Riggs was at a gas station in Minnesota City when he was approached by the victim, D.S. The victim confronted Riggs about the quality of the marijuana that Riggs had sold him several months earlier. Riggs left the gas station, but the victim followed Riggs and then attacked him. Riggs drew a knife and stabbed the victim twice, inflicting serious injuries.

The State charged Riggs with second-degree assault, Minn. Stat. § 609.222, subd. 1 (2014), and terroristic threats, Minn. Stat. § 609.713, subd. 1 (2014). Pursuant to a plea agreement, Riggs pleaded guilty to the terroristic threats offense, and the State dismissed the assault charge. The victim filed a request for restitution, including the cost

of hiring an employee to help the victim perform his job while his injuries healed.

At the restitution hearing, the State sought $2,973.07 for the victim's employment-related expenses.[1] Riggs urged the district court to order half of the amount of restitution requested for employment-related expenses because the victim was the initial aggressor.[2] The State objected on the ground that the victim's fault is not included in the exclusive list of factors for determining the amount of restitution to award in Minn. Stat. § 611A.045, subd. 1. After considering Riggs's "lack of income and inability to pay, the gravity of the injuries suffered by [the victim], and [the victim's] role as the aggressor in the conflict," the district court ordered Riggs to pay half of the victim's employment-related expenses. The district court reasoned that it was not an abuse of its "broad discretion to reduce the amount of restitution requested by apportioning some of the fault for the victim's injuries to the victim if the victim was the aggressor in the conflict."

The State appealed, and the court of appeals reversed. *State v. Riggs*, 845 N.W.2d 236, 239 (Minn. App. 2014). Citing *Northland Country Club v. Comm'r of Taxation*, 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976), the court of appeals explained that the omission of a phrase from a statute is presumed to be deliberate. *Riggs*, 845 N.W.2d at 238-39. The court of appeals reasoned that section 611A.045, subdivision 1, directs the district court to consider the victim's economic loss from the offense and the defendant's

---

[1]    The State also sought restitution of $113.40 for the victim's medical expenses and $100 for property damage. The district court's decision to grant those restitution requests is not at issue here.

[2]    Riggs has not at any point in these proceedings disputed that restitution is appropriate. The amount, not the fact, of restitution is the central issue here.

income, resources, and obligations. *Id.* at 238. Because the statute does not identify any other factors or provide that other factors may be considered, the court of appeals reversed the district court's restitution award and remanded with instructions to the district court to consider only the factors identified in section 611A.045, subdivision 1, when determining the amount of restitution. *Id.* at 239. We granted Riggs's petition for review.

## II.

Riggs argues that the court of appeals erred in its interpretation of section 611A.045, subdivision 1, because the court of appeals construed the phrase "shall consider" as "shall *only* consider." In doing so, Riggs argues, the court of appeals added a word that was omitted by the Legislature.

Statutory interpretation presents a question of law, which we review de novo. *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014). Our objective in statutory interpretation is to "effectuate the intent of the legislature." *Id.*; Minn. Stat. § 645.16 (2014). If the Legislature's intent is discernible from the statute's plain and unambiguous language, the letter of the law shall not be disregarded under the pretext of pursuing its spirit. *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 60 (Minn. 2014). A statute is ambiguous when its language is subject to more than one reasonable interpretation. *State v. Mauer*, 741 N.W.2d 107, 111 (Minn. 2007). The first question in our statutory interpretation analysis, therefore, is whether the statute's language is ambiguous. *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009).

4

When determining whether the language of a statute is ambiguous, we consider the canons of interpretation listed in Minn. Stat. § 645.08 (2014).[3]  One such canon provides that "words and phrases are construed according to rules of grammar and according to their common and approved usage."  Minn. Stat. § 645.08(1); *State v. Irby*, 848 N.W.2d 515, 525 (Minn. 2014).  Other factors exist, however, that are appropriate to consider when determining whether a statute is ambiguous.  Notably, we construe a statute as a whole and interpret its language to give effect to all of its provisions. *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013) (stating that "[m]ultiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous"); *State v. Gaiovnik*, 794 N.W.2d 643, 647 (Minn. 2011) ("[W]e do not examine different provisions [of a statute] in isolation.").  Put differently,

> [w]e apply the fundamental rule of statutory construction that a statute is to be read and construed as a whole so as to harmonize and give effect to all its parts.  Moreover, various provisions of the same statute must be interpreted in the light of each other, and the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain.

*Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 73-74, 93 N.W.2d 690, 698 (1958).

Thus, "[i]f the Legislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to

---

[3]  We have distinguished between the "canons of interpretation" in section 645.08 and other canons, described as "canons of construction" that may be considered only after concluding that a statute is ambiguous. *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 435 (Minn. 2009); *see State v. Nelson*, 842 N.W.2d 433, 445 (Minn. 2014) (Dietzen, J., dissenting) ("We use the 'canons of interpretation' set forth in section 645.08 to determine the threshold issue of whether the statutory language is unambiguous.").

5

the canons of statutory construction."[4] *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013); *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 434 (Minn. 2009).

With the canons of interpretation as our guide, we consider the statutory language in question. Section 611A.045, subdivision 1, provides in pertinent part:

> The court, in determining whether to order restitution and the amount of the restitution, shall consider the following factors:
> (1) the amount of economic loss sustained by the victim as a result of the offense; and
> (2) the income, resources, and obligations of the defendant.

Minn. Stat. § 611A.045, subd. 1(a). In our past consideration of section 611A.045, subdivision 1, we have focused primarily on the issues of the economic loss sustained by the victim and the ability of the defendant to pay. *See State v. Johnson*, 851 N.W.2d 60, 64-65 (Minn. 2014) (concluding that the State did not meet its burden of establishing the amount of damage the defendant caused to the victim's car); *State v. Lindsey*, 632 N.W.2d 652, 663-64 (Minn. 2001) (concluding that the restitution amount imposed

---

[4] Some of the "canons of construction" are listed in section 645.16, which provides in relevant part:

> When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:
> (1) the occasion and necessity for the law;
> (2) the circumstances under which it was enacted;
> (3) the mischief to be remedied;
> (4) the object to be attained;
> (5) the former law, if any, including other laws upon the same or similar subjects;
> (6) the consequences of a particular interpretation;
> (7) the contemporaneous legislative history; and
> (8) legislative and administrative interpretations of the statute.

Minn. Stat. § 645.16.

by the district court was not an abuse of discretion in light of the defendant's ability to pay); *State v. Tenerelli*, 598 N.W.2d 668, 672 (Minn. 1999) (concluding that the district court was within its discretion by ordering restitution for the cost of a healing ceremony); *State v. Maidi*, 537 N.W.2d 280, 285-86 (Minn. 1995) (concluding that district courts have flexibility to structure restitution orders that consider a defendant's ability to pay). We also have considered whether a district court may impose a restitution amount greater than the monetary parameters of the offense for which the defendant was convicted. *State v. Terpstra*, 546 N.W.2d 280, 281-83 (Minn. 1996). But we have not determined whether the two express factors in section 611A.045, subdivision 1, comprise an exclusive list of the factors that a district court may consider when imposing restitution.

Riggs argues that the plain meaning of the statute allows the district court to consider the victim's fault for two reasons. First, the statute lacks language that expressly limits consideration to the two factors provided. And second, the phrase "as a result of the offense" allows the district court to consider the circumstances surrounding the offense, such as the victim's role in the offense.[5] Riggs's argument, however, leads to a conclusion that is contrary to the plain meaning of section 611A.045, subdivision 1.

The plain and ordinary meaning of section 611A.045, subdivision 1, leads to the conclusion that, when ordering restitution, the district court erred by considering factors

---

[5] The parties do not dispute that the victim's economic loss occurred "as a result of the offense." Unlike the dissent of Justice Page, we do not interpret this language to mean "the offense of conviction." *See Rohmiller v. Hart*, 811 N.W.2d 585, 591 (Minn. 2012) ("We cannot supply that which the legislature purposely omits or inadvertently overlooks." (internal quotation marks omitted)).

other than those set forth in the statute.  The Legislature expressly provided two factors for the district court to consider, using the language "shall consider the following factors."  Minn. Stat. § 611A.045, subd. 1.  The statute does not include language that would support Riggs's argument, such as "the district court shall consider *at least* the following factors," "among the factors that the district court shall consider are," or any other combination of words that would give the district court discretion to consider additional factors.  Moreover, by using a definite article in the phrase, "*the* following factors," *id.* (emphasis added), the statute limits the district court to consideration of the express factors, *State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012).

We held in *Hohenwald* that "[t]he definite article 'the' is a word of limitation that indicates a reference to a specific object."  815 N.W.2d at 830.  Therefore, the factors expressly included in the subdivision are the "specific objects" to which the definite article "the" refers.  Use of the term "the" in section 611A.045, subdivision 1, precludes the consideration of factors not expressly included in this subdivision.  Our interpretation here is consistent with our analysis in *In re N.J.S.*, 753 N.W.2d 704 (Minn. 2008).  There, we concluded that the phrase "shall consider the following factors" in Minn. Stat. § 260B.125, subd. 4 (2014),[6] resulted in an "exclusive list of factors that a court may

---

[6]     Minnesota Statutes § 260B.125, subd. 4, lists six factors that a court must consider when determining whether to certify a child for adult prosecution.  Subdivision 4 provides: "In determining whether the public safety is served by certifying the matter, *the court shall consider the following factors. . . .*"  Minn. Stat. § 260B.125, subd. 4 (emphasis added).  Similarly, the statute at issue here, section 611A.045, subdivision 1, provides, "*The court*, in determining whether to order restitution and the amount of the
(Footnote continued on next page.)

8

consider." 753 N.W.2d. at 710 n.3; *cf. Gaiovnik*, 794 N.W.2d at 651 (concluding that a district court need not consider whether a victim requested restitution because "the Legislature did not include a victim's request for restitution among the factors the court was required to consider").

Our conclusion that the plain language of section 611A.045, subdivision 1, provides an exclusive list of factors for determining the amount of restitution to award also is supported by an analysis of the surrounding statutory provisions. In Minn. Stat. § 611A.04 (2014), the Legislature expressly created a nonexclusive list by stating that "[a] request for restitution may include, but *is not limited to*, any out-of-pocket losses resulting from the crime." (Emphasis added.) But in section 611A.045, subdivision 1, the Legislature included no such language, despite its clearly evident ability to do so.

Additionally, several sections later in chapter 611A, the Legislature addressed the contributory misconduct of the victim—the same factor that Riggs seeks to add to section 611A.045, subdivision 1. *See* Minn. Stat. § 611A.54 (2014). Section 611A.54 offers instructions for determining the amount of reparations to which crime victims are entitled.[7] Important for our analysis is section 611A.54(2), which provides that

---

(Footnote continued from the previous page.)
restitution, *shall consider the following factors*: (1) the amount of economic loss . . . ." Minn. Stat. § 611A.045, subd. 1 (emphasis added).

[7] Victims of crimes may file claims for reparations with the Crime Victims Reparations Board. *See* Minn. Stat. § 611A.53, subd. 2(5) (2014). The Crime Victims Reparations Board is a program of the Department of Public Safety and receives funding for reparations from the state. Minn. Stat. §§ 611A.55, subd. 1, 611A.612 (2014). A victim may receive reparations equal to the victim's economic loss that resulted from
(Footnote continued on next page.)

"reparations shall be denied or reduced to the extent, if any, that the board deems reasonable because of the contributory misconduct of the claimant or of a victim through whom the claimant claims." Minn. Stat. § 611A.54(2). Thus, within the same chapter, the Legislature expressly included the victim's fault as a relevant factor in the reparations context, but it did not include the victim's fault as a relevant factor in the restitution context. Without more, we cannot glean from the Legislature's omission its intention to include an unstated factor.

In sum, after considering the common and approved meaning of the words used in section 611A.045, subdivision 1, and the surrounding statutory provisions, we conclude that the Legislature's intent is discernible from the statute's plain and unambiguous language. The Legislature intended to provide an exclusive list of factors for determining the amount of restitution to award when it enacted section 611A.045, subdivision 1.

III.

Riggs argues alternatively that, even if section 611A.045, subdivision 1, provides an exclusive list of factors for determining the amount of restitution to award, the victim's role as the initial aggressor was properly considered as part of the first factor in subdivision 1(a), which requires a district court to consider "the amount of economic loss sustained by the victim as a result of the offense." We disagree.

---

(Footnote continued from the previous page.)
injury or death caused by a crime. Minn. Stat. §§ 611A.52, subd. 8, 611A.54 (2014). If a victim recoups economic loss from a collateral source, such as restitution paid by the offender, the reparations amount for which the victim is eligible decreases. Minn. Stat. §§ 611A.52, subd. 5(1), 611A.54(1) (2014).

10

Riggs contends that the phrase "as a result of the offense" allows a district court to consider "the circumstances of the offense and the victim's role." However, Riggs's contention is inconsistent with the plain language of section 611A.045, subdivision 1. *Black's Law Dictionary* defines "offense" as "[a] violation of the law; a crime, often a minor one." *Black's Law Dictionary* 1250 (10th ed. 2014). The verb "result" is defined as "[t]o happen as a consequence." *The American Heritage Dictionary* 1497 (5th ed. 2011). The associated noun "result" means "[s]omething that follows naturally from a particular action, operation, or course; a consequence or outcome." *Id.* Subdivision 1(a) therefore plainly requires the district court to consider the economic loss sustained by the victim as a consequence of the defendant's violation of the law.[8] The reasons underlying Riggs's decision to violate the law are not material. Importantly, Riggs does not claim that the victim engaged in any post-offense conduct that increased the victim's economic loss. To summarize, a victim's role as an initial aggressor may not be considered when

---

[8] The dissent of the Chief Justice argues that "alternative causation arguments are part of the typical causation analysis." However, contributory negligence is a defense in cases only where the action is founded on the negligence of the defendant. *Lambrecht v. Schreyer*, 129 Minn. 271, 274, 152 N.W. 645, 646 (1915). It is not a defense in an action for assault. *Id.*; *see also Victor v. Sell*, 301 Minn. 309, 315, 222 N.W.2d 337, 341 (1974) (negligence on the part of the plaintiff is not a defense to an intentional tort); Restatement (Second) of Torts § 481 (2006) (explaining that a plaintiff's contributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant that is wrongful because it is intended to cause harm to some legally protected interest of the plaintiff or a third person). Moreover, the Legislature has not provided for comparative fault in the context of restitution, unlike in other areas of law, such as civil liability and reparations. *See* Minn. Stat. §§ 604.01, subd. 1 (diminishing civil damages "in proportion to the amount of fault attributable to the person recovering"), 611A.54(2) (providing for a reduction in reparations for contributory misconduct of a victim) (2014).

determining the amount of restitution to award for economic loss sustained by the victim as a result of the offense.

In light of our interpretation of section 611A.045, subdivision 1, according to the plain and ordinary meaning of its words, we conclude that the district court erred by considering factors beyond those expressed in this statutory provision when awarding restitution. Therefore, we affirm the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Affirmed.

DISSENT

GILDEA, Chief Justice (dissenting).

The majority concludes that the district court erred in considering the victim's fault in awarding restitution. I agree with the majority that the plain language of Minn. Stat. § 611A.045, subd. 1 (2014), provides an exclusive list of factors the court is to apply when determining the amount of restitution, but I disagree with the result the majority reaches. In my view the statutory phrase "as a result of the offense" allows the court to consider whether the victim's conduct caused the loss at issue. *Id.*, subd. 1(a)(1). And although I agree with the result in Justice Page's dissent, I do not join his dissent because it suggests that the court can award restitution only for losses caused by the specific crime of conviction (in this case, terroristic threats).[1] Accordingly, I write this separate dissent.

Minnesota Statues § 611A.045, subd. 1(a)(1) provides that the district court shall consider "the amount of economic loss sustained by the victim as a result of the offense." In other words, the question at the restitution hearing is whether the offense caused the loss. In answering that causation question, the statute does not, as the majority

_____

[1]    As we said in *State v. Terpstra*, 546 N.W.2d 280, 283 (Minn. 1996), the fact that the State could prove beyond a reasonable doubt only that the defendant committed theft of $2,500 did "not preclude the district judge from finding that [the defendant] misappropriated $45,341 . . . under a preponderance of the evidence standard" at a restitution hearing. *Terpstra* confirms that restitution is not limited to the crime of conviction. The statute similarly makes this clear because it does not limit restitution to the victim's losses as a result of the conviction. Rather, the statute provides for restitution suffered "as a result of the offense." Minn. Stat. § 611A.045, subd. 1(a)(1). *See also* Minn. Stat. § 611A.01(b) (2014) (defining "victim" as someone "who incurs loss or harm as a result of a crime").

D-1

concludes, prohibit the district court from considering evidence or argument that something other than the offense (i.e., the fault of the victim) caused the loss.

A "result," as the majority states, is "[s]omething that follows naturally from a particular action, operation, or course; a consequence or outcome." *The American Heritage Dictionary* 1497 (5th ed. 2011). In this case, Riggs argued that the victim would not have suffered the loss at issue if the victim had not started the confrontation. In other words, Riggs argued that the loss was not just a consequence of his behavior but followed naturally from the victim's behavior. Such alternative causation arguments are part of the typical causation analysis. *See Jack Frost, Inc. v. Engineered Bldg. Components Co., Inc.*, 304 N.W.2d 346, 352 (Minn. 1981) (holding that a plaintiff who suffered an injury "*as a result of* its own negligence and that of [the defendant]" is entitled to damages reduced by the proportion of the plaintiff's own negligence (emphasis added)).

I would adhere to that traditional causation analysis in the context of the restitution statute. Under such an analysis, the restitution statute permits the district court to consider alternative causes of the loss in deciding how much, if any, restitution to award. I therefore would hold that the district court did not err in concluding that the victim's losses were not entirely a "result" of Riggs's offense.

In sum, the majority is correct that the district court must consider only the two factors listed in section 611A.045, subdivision 1. Here, the court considered only those factors and determined that a portion of the loss sustained was not "as a result of the

offense," but as a result of the victim's actions.  I would reverse the court of appeals and hold that the district court did not err.

For these reasons, I respectfully dissent.


ANDERSON, Justice (dissenting).

I join in the dissent of the Chief Justice.

PAGE, Justice (dissenting).

The court's conclusion that the "plain and unambiguous" language of Minn. Stat. § 611A.045, subd. 1 (2014), precludes the district court from considering the victim's role as aggressor in determining the restitution award ignores the fact that *any* restitution award in this case would be based on circumstances outside the offense of conviction, and thus outside the criteria listed in section 611A.045, subdivision 1.  Thus, the court's conclusion is neither consistent with the "plain and unambiguous" language of the statute, nor with the just administration of the statute.

Minnesota Statutes § 611A.045, subd. 1(a), provides:

The court, in determining whether to order restitution and the amount of the restitution, shall consider the following factors:

(1) the amount of economic loss sustained by the victim as a result of *the offense*; and

(2) the income, resources, and obligations of the defendant.

(Emphasis added.)  Under Minn. Stat. § 611A.04, subd. 1(a) (2014), a victim may only receive restitution "as part of the disposition of a criminal charge . . . against the offender if the offender *is convicted*."  (Emphasis added.)  Because a criminal conviction is a prerequisite for restitution, the reference to "the amount of economic loss sustained by the victim as a result of *the offense*" in Minn. Stat. § 611A.045, subd. 1(a), logically refers to the offense of conviction.  By concluding that "offense" refers to the offense of conviction, I am not, as the court asserts, supplying words "purposely omit[ted] or inadvertently overlook[ed]" by the Legislature.  Instead, the court interprets "the offense"

in a manner that ignores the statutory requirement of a conviction and renders the statute ambiguous. If "the offense" does not refer to the offense of conviction, then what offense does it refer to? An offense of which a defendant has been acquitted? An offense that occurred 5 or even 10 years ago? The only reasonable interpretation of Minn. Stat. § 611A.045, subd. 1(a), is that "the offense" referred to is the offense of conviction.

Accordingly, if, as the court claims, a district court may only consider the factors listed in section 611A.045, subdivision 1(a), in determining the amount of a restitution award, the award of *any* amount of restitution must be based on economic loss resulting solely from the offense *of conviction*. But that is not what happened here. In this case, the victim's request for restitution is based on economic loss resulting from an assault. Riggs, however, did not plead guilty to nor was he convicted of an assault. Instead, Riggs pleaded guilty to and was convicted of making terroristic threats, in violation of Minn. Stat. § 609.713, subd. 1 (2014).[1] In exchange for Riggs' plea, the State dismissed the assault charge. Therefore, the court is speaking out of both sides of its mouth. It asserts that section 611A.045, subdivision 1(a), provides an "exclusive list" of factors for

---

[1]     Minnesota Statutes § 609.713, subd. 1, provides:

> Whoever *threatens*, directly or indirectly, to commit any crime of violence with [the] purpose to terrorize another or to cause evacuation of a building, place of assembly, vehicle or facility of public transportation or otherwise to cause serious public inconvenience, or in a reckless disregard of the risk of causing such terror or inconvenience may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

(Emphasis added.)

determining the amount of restitution—a list that does not encompass the circumstances surrounding the offense—but by permitting a restitution award based on the assault the court necessarily considers the circumstances surrounding "the offense."

To the extent the district court is permitted to consider economic loss resulting from the circumstances surrounding the offense of conviction, i.e., the assault, to determine restitution, the district court should also be permitted to consider the circumstances surrounding the assault—including the victim's role as aggressor. Such a construction of section 611A.045 is, unlike the court's interpretation, internally consistent. Further, it is consistent with our precedent. The court seems to view the victim's role in the assault as too attenuated in its connection to the offense of conviction to be considered in determining "the amount of economic loss sustained by the victim as a result of the offense" under Minn. Stat. § 611A.045, subd. 1(a)(1). Although we have admonished district courts to be careful not to award restitution based on a claim "so attenuated in its cause that it cannot be said to result from the defendant's criminal act," *State v. Palubicki*, 727 N.W.2d 662, 667 (Minn. 2007), we have permitted district courts to consider factors far less directly connected to the defendant's criminal conduct than any role the victim may have played in the circumstances leading up to the offense. For example, in *Palubicki* we rejected an argument that the expenses incurred by the murder victim's children in connection with attending the defendant's trial were "too attenuated from the criminal act" because the victim's kin "were in court as a direct result of the [defendant's] crime." *Id.* In this case, the victim's role as aggressor was part and parcel of the incident that was the basis for Riggs' conviction; this factor is hardly more

D-3

attenuated in its connection to the offense than the facts the district court was permitted to consider in *Palubicki*.

For these reasons, I respectfully dissent.