STATE ex rel. Bobbie Jean PROCTOR
and Vincent Proctor, Relators,

v.

The Honorable Edith L. MESSINA, Circuit Judge, Sixteenth Judicial Circuit, Jackson County, Missouri, Respondent.

No. SC 90610.

Supreme Court of Missouri,
En Banc.

Aug. 31, 2010.

Hans H. van Zanten and Michael T. Yonke, Yonke & Pottenger LLC, Kansas City, for relators.

Sean T. McGrevey and Scott M. Adam, Adam & McDonald PA, and Jana V. Richards and Maureen M. Brady, Sanders, Conkright & Warren LLP, Overland Park, Kansas City, for Health Care defendants/respondents.

Harvey M. Tettlebaum and Robert L. Hess II, Husch Blackwell LLP, Jefferson City, for the American College of Radiology, Missouri Radiological Society, Missouri Dental Association, Missouri Healthcare Association and Delmar Gardens North Operating LLC, which filed briefs as friends of the Court.

Robert W. Cotter and Matthew W. Geary, Dysart, Taylor, Lay, Cotter & McMonigle PC, Kansas City, for the Missouri Organization of Defense Lawyers, which filed a brief as a friend of the Court.

R. Kent Sellers, Lathrop & Gage LLP, Kansas City, for the Missouri Hospital Association, which filed a brief as a friend of the Court.

Leland F. Dempsey and Ashley F. Baird, Dempsey & Kingsland PC, Kansas City, for the Missouri Association of Trial Attorneys, which filed a brief as a friend of the Court.

ZEL M. FISCHER, Judge.

Bobbie Jean and Vincent Proctor seek a writ to prohibit the Circuit Court of Jackson County (trial court) from enforcing its purported discovery order in the pending

civil case of *Bobbie Jean Proctor & Vincent Proctor v. Kansas City Heart Group, P.C., Timothy L. Blackburn, M.D., & St. Joseph Medical Center,* Case No. 0816–CV24576. In the case below, the trial court issued a purported *formal* discovery order advising non-parties that the trial court believed it was permissible for these non-party medical providers to engage in *informal ex parte* communications with attorneys for the defendant in the underlying cause. The court of appeals issued a preliminary writ to examine the extent to which the federal Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat.1936 (HIPAA), preempted Missouri law on the issue of *ex parte* communications in informal discovery and also to re-examine the State of Missouri's law on this topic. By opinion, the court of appeals made the preliminary writ absolute, and this Court granted transfer.[1]

## Facts

Bobbie Jean and Vincent Proctor filed a petition for damages for personal injuries against Kansas City Heart Group, P.C., Timothy L. Blackburn, M.D., and St. Joseph Medical Center. In their petition, the plaintiffs alleged that Bobbie Jean suffered damages arising out of the defendants' medical negligence during her surgery in March 2004.

On January 28, 2009, Blackburn and Kansas City Heart Group, P.C., filed a motion in which they sought a *formal* order from the court specifically authorizing *informal ex parte* communications with

Bobbie Jean's treating physicians and other health care providers. On February 24, 2009, St. Joseph Medical Center filed a similar motion. The trial court heard oral arguments on June 11, 2009. On July 17, 2009, the trial court issued its purported *formal* order sustaining the motions and "authorized" non-party medical providers of Bobbie Jean Proctor to engage in *informal ex parte* communications with attorneys representing defendant medical providers, although the purported "order" specifically advises any of plaintiffs' medical providers presented with the purported "order" that they are free to ignore the purported "order" as it relates to *ex parte* communications with the parties and their attorneys if they have not received authorization from their patient to engage in such *ex parte* communications.[2] The order did not limit the scope of disclosures to matters that would be calculated to lead to admissible evidence. The plaintiffs filed a motion seeking a writ of prohibition.

■ "Prohibition is a discretionary writ that only issues to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power." *State ex rel. Marianist Province of the U.S. v. Ross,* 258 S.W.3d 809, 810 (Mo. banc 2008).

## Preemption

In *State ex. rel Collins v. Roldan,* 289 S.W.3d 780, 783 (Mo.App.2009), the court noted that pursuant to the Supremacy Clause of the United States Constitution, HIPAA may preempt Missouri law on the

---

1. Portions of the court of appeals principal opinion by Judge Mark D. Pfeiffer and the concurring opinion of Judge James M. Smart, Jr., are used without further attribution.

2. This Court's emphasis on the formality of the trial court's order expressly authorizing informal, *ex parte* communications with a liti-

gant patient's non-party physician absent express authorization from the patient relates to this Court's later discussion that there is no rule of discovery authorizing such an order and that the trial courts in the State of Missouri have no oversight authority to supervise such informal discovery.

issue of *ex parte* communications between an attorney and a treating physician. The court did not examine or decide the issue because the case was decided on other grounds. *Id.* at 784 n. 6. The issue of whether or not HIPAA preempts Missouri law is an issue of first impression in Missouri courts.

The Supremacy Clause of the United States Constitution states that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Under this clause, state laws that conflict with federal laws are preempted and have no effect. *Connelly v. Iolab Corp.*, 927 S.W.2d 848, 851 (Mo. banc 1996) (internal citations omitted). The United States Supreme Court has cautioned that in the interest of preventing federal encroachment on the state's authority, a court interpreting a federal statute pertaining to areas traditionally controlled by state law should be reluctant to find preemption. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Thus, the United States Supreme Court has held that a federal law will preempt state law only when it is the clear and manifest purpose of Congress to do so. *Id.* To determine if Congress intended to preempt state law, the court must examine the text and structure of the federal law. *Id.*

Congress included an express preemption clause in HIPAA. *See* 42 U.S.C.A. § 1320d–7(a). Because HIPAA contains an express preemption clause, this Court's task is to construe the plain language of the statute to determine the extent to which Congress intended for HIPAA to preempt state law. *CSX Transp.*, 507 U.S. at 664, 113 S.Ct. 1732.

HIPAA's preemption clause is contained in 42 U.S.C.A. § 1320d–7, which states:

(1) General rule

Except as provided in paragraph (2), *a provision or requirement under this part, or a standard or implementation specification* adopted or established under sections 1320d–1 through 1320d–3 of this title, *shall supersede any contrary provision of State law,* including a provision of State law that requires medical or health plan records (including billing information) to be maintained or transmitted in written rather than electronic form.

(2) Exceptions

A provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d–1 through 1320d–3 of this title, shall not supersede a contrary provision of State law, if the provision of State law—

(A) is a provision the Secretary determines—

(i) is necessary—

(I) to prevent fraud and abuse;

(II) to ensure appropriate State regulation of insurance and health plans;

(III) for State reporting on health care delivery or costs; or

(IV) for other purposes; or

(ii) addresses controlled substances[.]

Pursuant to the authority granted to it under HIPAA, 42 U.S.C.A. § 1320d–2(d)(2)(A), the Secretary of the Department of Health and Human Services (the Secretary) promulgated a federal regulation on HIPAA's preemptive effect. This regulation is similar to HIPAA's statutory language and states that "*[a]* standard, requirement, or implementation specification adopted under this subchapter that is contrary to *a* provision of State law

preempts the provision of State law." 45 C.F.R. § 160.203 (emphasis added). The regulations define "State law" as "a constitution, statute, regulation, rule, common law, or other State action having the force and effect of law." 45 C.F.R. § 160.202. 45 C.F.R. § 160.203 also provides exceptions to this general rule and states that HIPAA will not preempt state law when, among other things, the state law is more stringent:

A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:

. . . .

(b) The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

HIPAA's language states that "*a* provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d–1 through 1320d–3 of this title, shall supersede *any contrary provision* of State law[.]" 42 U.S.C.A. § 1320d–7(a)(1). The Secretary has stated that, to engage in a preemption analysis, a court must first isolate a specific provision of HIPAA and compare that provision with its analogous state provision:

The initial question that arises in the preemption analysis is, what does one compare? The statute directs this analysis by requiring the comparison of a "provision of State law [that] imposes requirements, standards, or implementation[ ] specifications" with "the requirements, standards, or implementation specifications imposed under" the feder-

al regulation. The statute thus appears to contemplate that what will be compared are the State and federal requirements that are analogous, i.e., that address the same subject matter.

Department of Human Health and Services, Standards for Privacy of Individually Identifiable Health Information, 64 Fed. Reg. 59918, 59995 (Nov. 3, 1999). The Secretary also recognizes that, even if HIPAA preempts one provision of state law, the rest of the state's laws relating to the privacy of an individual's health information would remain enforceable:

It is recognized that States generally have laws that relate to the privacy of individually identifiable health information. These laws continue to be enforceable, unless they are contrary to part C of title XI or the standards, requirements, or implementation specifications adopted or established pursuant to the proposed subpart x.

*Id.*

The issue for this Court engaging in HIPAA preemption analysis, therefore, is not whether or not HIPAA, as a general matter, is contrary to and more stringent than the entirety of a state's laws on the privacy of a patient's medical information. Rather, the issue is whether or not a specific provision of HIPAA is contrary to and more stringent than a specific provision of state law. *See also* Beverly Cohen, *Reconciling the HIPAA Privacy Rules with State Laws Regulating ex parte Interviews of Plaintiffs' Treating Physicians: A Guide to Performing HIPAA Preemption Analysis*, 43 Hous. L.Rev. 1091, 1133 (Winter 2006) (stating that most courts err in performing HIPAA preemption analysis because they fail to isolate specific provisions and instead attempt to determine whether or not the entire state statutory scheme is contrary to the entirety of HIPAA).

Under the plain and ordinary language of HIPAA's preemption clause, to engage in a preemption analysis, this Court must first identify the specific provision of HIPAA that conflicts with any provision of Missouri's law on *ex parte* communications between attorneys and physicians to determine whether or not any provision of Missouri's law on such *ex parte* communications is contrary to any provision of HIPAA's and, if so, whether or not it is more or less stringent than HIPAA's provision.

## HIPAA Generally

This Court's examination of HIPAA's privacy rule reviews the text of the regulations mindful of the intent of Congress in directing the Secretary to issue rules and regulations to implement the HIPAA privacy rule. In HIPAA, Congress directed the Secretary to promulgate rules and regulations designed to **ensure the privacy of patients' medical information.** 42 U.S.C.A. § 1320d–2(d)(2)(A); *see also Crenshaw v. MONY Life Ins. Co.,* 318 F.Supp.2d 1015, 1028 (S.D.Cal.2004); *Moreland v. Austin,* 284 Ga. 730, 670 S.E.2d 68, 70 (2008) (HIPAA's goal is to protect a patient's health information). With the overriding governing principle of patient privacy, the Secretary did, in fact, create regulations prohibiting health care providers from disclosing "protected health information," whether "oral or recorded in any form or medium," unless medical providers comply with a narrow list of exceptions separately itemized by the Secretary elsewhere in the Secretary's regulatory scheme. The HIPAA regulations draw no distinction between formal versus informal disclosures and, instead, broadly prohibit all disclosures in the absence of a specifically enumerated exception to this general rule of prohibition.

Specifically, the Secretary defined protected "health information" as:

*[A]ny* information, whether **oral** or recorded in any form or medium, that:

(1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and

(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

45 C.F.R. § 160.103 (emphasis added). This federal regulation's use of the term *oral* communication clearly includes *ex parte "oral"* communications with a physician; likewise, it encompasses health information that is part of a written medical record or the physician's memory of his treatment of the patient. By its text, HIPAA promotes a renewed awareness of, or emphasis upon, the principle of patient privacy. Further, by its text, HIPAA prohibits physicians from engaging in an *ex parte* oral disclosure of a patient's protected health information unless an express exception applies.

## Missouri Law on the Issue of ex parte Communications

Missouri common law historically provides that a litigant patient in a personal injury lawsuit could not be compelled by court order to sign medical authorizations consenting to *ex parte* communications with treating physicians. *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389, 395 (Mo. banc 1989). In *Woytus,* this Court expressed numerous policy statements that mirror the privacy policies of HIPAA, and it is worth noting a number of these statements in analyzing the relationship of HIPAA, Missouri law, and the case presently before us. For illustrative purposes:

Although the patient is deemed to have waived the statutory privilege with regard to certain information, the ongoing confidential and fiduciary relationship between physician and patient continues to require protection from conduct that might jeopardize the sanctity of that relationship.... "A physician occupies a position of trust and confidence as regards his patient—a fiduciary position. It is his duty to act with the utmost good faith. This duty of the physician flows from the relationship with his patient and is fixed by law...."

*Id.* at 393 (citation omitted). The Court refused to compel a patient to sign a medical authorization order consenting to *ex parte* communications because "the [Missouri Rules of Court] do not expressly forbid *ex parte* discussion, [or] expressly authorize such discussion as a method of discovery." *Id.* at 392. This Court refused to add a non-enumerated discovery method to the rules because of the potential risks to the physician-patient privilege:

[T]his Court will not require that a non-enumerated discovery method be added to those already available under the [Missouri Rules of Court]. Information or evidence that can be obtained legitimately through *ex parte* discussion [with treating physicians] can also be obtained through the methods of discovery listed in the [Missouri Rules of Court]. Any burdens caused defendants by being restricted to the specially enumerated discovery procedures are outweighed by the potential risks to the physician-patient relationship in deviating from those procedures.

*Id.* at 395. These risks include the possibility (or, some would argue, probability) that:

An unauthorized *ex parte* interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views.

*Id.*

Subsequently, this Court issued a pair of companion opinions addressing voluntary and informal *ex parte* communications between plaintiff's treating physician and defendant or defendant's representatives in a medical malpractice case. *Brandt v. Pelican,* 856 S.W.2d 658 (Mo. banc 1993) (*Brandt I*); *Brandt v. Med. Def. Assocs.,* 856 S.W.2d 667 (Mo. banc 1993) (*Brandt II*).

In *Brandt I,* the issue presented was whether voluntary and informal *ex parte* communications between defense counsel and plaintiff's treating physician (without plaintiff's consent) were prohibited during the discovery period of litigation. 856 S.W.2d at 661. The Court focused on Missouri's physician-patient testimonial privilege statute, § 491.060(5), RSMo Supp. 1992, and answered the question by concluding that there was nothing in this statute that expressly prohibited [3] informal and voluntary *ex parte* communications with plaintiff's physician. *Id.* Lacking a statutory or common law testimonial preclusion for this informal discovery measure, this Court refused to sanction the defendant for the voluntary and informal *ex parte* communication with the plaintiff's treating physician. *Id.* at 662. Notably, though, this Court reaffirmed its previous holding in *Woytus* that a plaintiff cannot be compelled to execute a medical authorization authorizing his treating physicians

---

**3.** There is also nothing in the statute that affirmatively authorizes informal and involun-

tary *ex parte* communications with a litigant patient's treating physicians.

to engage in *ex parte* communications with the defendant nor could plaintiff's treating physician be compelled to engage in informal *ex parte* discussions with the defense. *Id.* Likewise, this Court commented that it was correct to observe that "*Woytus* 'shows a judicial philosophy that discourages *ex parte* conversations with plaintiff's doctor.'" *Id.* at 661 (citation omitted).

In *Brandt II*, this Court's starting point of discussion was a reminder that, in *Brandt I*, the Court had concluded that there was no statutory basis in Missouri for concluding that voluntary *ex parte* communications between defense counsel and plaintiff's treating physician were **prohibited.** 856 S.W.2d at 669. With no statutory basis to **prohibit** Missouri personal injury litigants from engaging in informal discovery via *ex parte* voluntary discussion with plaintiff's treating physicians, this Court in *Brandt II* shifted its analysis to whether such voluntary *ex parte* communications by the plaintiff's treating physician violated the physician's common law fiduciary duty of confidentiality. *Id.* This Court decided the case based upon the doctrine of waiver, concluding that once a patient/physician privilege waiver occurs in the filing of a person-

al injury lawsuit in which the plaintiff's medical condition is placed at issue, the plaintiff has waived both the physician's testimonial privilege and the physician's fiduciary duty of confidentiality, including voluntary *ex parte* conferences with the plaintiff's treating physician within the limited scope of the waiver. *Id.* at 674. Notably, though, this Court in *Brandt II* reiterated its warning in *Brandt I* that *nothing in either of these opinions is designed to create any right to compel the plaintiff or his treating physicians to authorize, or participate in, such ex parte communications. Id.* at 674–75.[4]

### Treating Physicians Comply with HIPAA and Missouri Law

■ Subsequent to *Brandt I* and *Brandt II*, Congress passed HIPAA. Although Missouri's statutory law and this Court's rules of discovery on the topic of the physician testimonial privilege has remained silent on the issue of voluntary *ex parte* communications with a litigant patient's treating physician, HIPAA is not silent. HIPAA's general rule is that *ex parte* communications with a litigant patient's physician are prohibited. Absent

---

**4.** This is a medical malpractice case. Informal *ex parte* discovery in such a case presents special inherent risks that are not generally present in other types of personal injury litigation. In *Woytus*, which did not involve a medical malpractice claim, the Court nevertheless felt compelled to mention the risks of *ex parte* interviews in *medical malpractice* cases:

This court will not overlook the current concerns in the medical malpractice insurance industry and the attitudes of physicians and carriers alike. An unauthorized *ex parte* interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the

treating physician's views. The potential for impropriety grows even larger when defense counsel represents the treating physician's own insurance carrier and when the doctor, who typically is not represented by his personal counsel at the meeting, is unaware that he may become subject to suit by revealing the plaintiff/patient's confidences which are not pertinent to the pending litigation.

776 S.W.2d at 395 (quoting *Manion v. N.P.W. Med. Ctr. of N.E. Pa., Inc.*, 676 F.Supp. 585, 594–95 (M.D.Pa.1987)). What is possible in an "unauthorized" *ex parte* interview would also be possible in one "authorized" by a court. It is not a likely coincidence that, excepting *Woytus*, the reported cases involving attempts by defendants to engage in *ex parte* interviews with treating physicians are *all* medical malpractice cases.

an exception to this general rule in the enumerated exceptions outlined in HIPAA, HIPAA plainly prohibits such communications.

As this Court noted above, to determine if HIPAA preempts state law, this Court must determine whether or not HIPAA's prohibition of the oral disclosure of plaintiff's protected health information by one or more of plaintiff's treating physicians, absent authorization by plaintiff, preempts Missouri law that fails to prohibit such *ex parte* disclosures. Pursuant to HIPAA's regulations:

> Contrary, when used to compare a provision of State law to a standard, requirement, or implementation specification adopted under this subchapter, means:
>
> (1) A covered entity would find it impossible to comply with both the State and federal requirements; or
>
> (2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of part C of title XI of the Act or section 264 of Pub.L. 104–191 . . . as applicable.

45 C.F.R. § 160.202.

Missouri courts are bound to follow HIPAA's statutory and regulatory mandate, but HIPAA does not preempt Missouri law on this particular issue.[5] As this Court noted above, in *Brandt I*, this Court did not affirmatively *create* a right for attorneys to engage in voluntary and informal *ex parte* communication with plaintiff's

physician. Instead, this Court merely confirmed that, at that time, there was no state or federal law that *prohibited* such informal communications with plaintiff's physicians. *Brandt I*, 856 S.W.2d at 663. In other words, the holding was that in the absence of a statutory prohibition—either state or federal—it would not prohibit *ex parte* communications between an attorney and a physician.

### Application of HIPAA's Enumerated Exceptions Prohibition of ex parte Communications

■ HIPAA's regulation that prohibits the unauthorized disclosure of a patient's protected health information, however, does include enumerated exceptions to the ban:

> (1) Permitted uses and disclosures. A covered entity is *permitted* to use or disclose protected health information as follows:
>
> (i) To the individual;
>
> (ii) For treatment, payment, or health care operations, as permitted by and in compliance with § 164.506;
>
> (iii) Incident to a use or disclosure otherwise permitted or required by this subpart, provided that the covered entity has complied with the applicable requirements of § 164.502(b), § 164.514(d), and § 164.530(c) with respect to such otherwise permitted or required use or disclosure;

---

5.
  HIPAA's general preemption rule is that any state law that is contrary to HIPAA will be preempted. Therefore, key to determining HIPAA preemption is the threshold requirement that preemption by HIPAA will not occur unless the state law and HIPAA are "contrary."

  The Privacy Rule defines "contrary" as meaning that "[a] covered entity would find

it impossible to comply with both the State and federal [HIPAA Privacy Rule] requirements" (the "[i]mpossibility [t]est"). Stated another way, the two laws are contrary under the impossibility test if any action taken by a covered entity—either to disclose the protected health information or not to disclose the protected health information—would violate either the state law or HIPAA. *Cohen,* at 1105–06.

*(iv) **Pursuant to and in compliance with a valid authorization under § 164.508;***

(v) Pursuant to an agreement under, or as otherwise permitted by, § 164.510; and

*(vi) **As permitted by and in compliance with this section, § 164.512, or § 164.514(e), (f), or (g).***

45 C.F.R. § 164.502(a) (emphasis added). For example, under 45 C.F.R. § 164.502(a), HIPAA permits *ex parte* communications between a physician and a third party when the patient expressly authorizes the *ex parte* communications by issuing a valid authorization pursuant to 45 C.F.R. § 164.508(a)(1), which says:

> Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or disclosure of protected health information, such use or disclosure must be consistent with such authorization.

■ In this case, however, the plaintiff did not issue an authorization under 45 C.F.R. § 164.508(a)(1). Instead, the trial court issued a purported order directed to non-party medical providers who had provided treatment to the plaintiff authorizing such medical providers to engage in *ex parte* communications with the defendant's attorneys [6] because it believed that its purported order fell under 45 C.F.R. § 164.502(a)'s exceptions for disclosures that are permitted under 45 C.F.R. § 164.512(e). The trial court's purported order states, in pertinent part:

> TO: All Hospitals, Clinics, Pharmacies, Physicians, Social Workers, Educators, Psychiatrists, Psychologists, Therapists, Governmental Agencies, (State and Federal); All Other Medical Institutions, Practitioners, Health Care Providers, Past and Present.
>
> . . . .
>
> You are further notified that, pursuant to federal and state law, counsel for the defendants are hereby authorized to talk with Bobbie Jean Proctor's treating physicians or other health care providers, without counsel or the parties, including the plaintiff, being present or participating, provided the health care provider consents to the interview. This is based on the Court's finding that the plaintiff has made a claim for personal injuries, and in filing this lawsuit has waived any privilege existing between the patient and health care provider. This Order does not require you to meet or speak with any attorney in this proceeding. You have the right to decline an attorney's request to speak or meet with you informally.
>
> . . . .
>
> This Order complies with HIPAA federal standards for privacy of individual

---

**6.** The effect of the trial court's purported order is to provide an advisory opinion to persons and entities not parties to the underlying litigation. Aside from Missouri's case law that disfavors advisory opinions, *see, e.g., State v. Burgin*, 203 S.W.3d 713, 717 (Mo. App.2006), here the trial court is communicating an advisory opinion to those not even a party to the underlying litigation. This advisory opinion creates substantial risk on the part of the treating physician who could unin-

tentionally communicate protected health information outside the scope of information waived by the patient's lawsuit. Not only would that have the potential to prejudice the patient by going beyond the waiver and the scope of discovery, but it would also have potential detriment to the physician who would be subject to the severe penalties associated with a HIPAA violation. *See* 42 U.S.C. § 1320d–6(b).

health information, 45 C.F.R. Parts 160 and 164. . . .

This Court further enters a qualified protective order consistent with 45 C.F.R. 164.512(e)(1). Specifically, the parties are prohibited from using or disclosing the protected health information of Bobbie Jean Proctor for any purpose other than this litigation. Further, the parties agree to return to the covered entity or destroy the protected health information (including all copies made) at the end of this litigation.

(Emphasis removed.)

Under 45 C.F.R. § 164.512(e)(1), HIPAA authorizes disclosure in the course of any judicial or administrative proceeding:

> (1) Permitted disclosures. *A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:*
>
> (i) *In response to an order of a court* or administrative tribunal, provided that the covered entity *discloses only the protected health information expressly authorized by such order*; or
>
> (ii) *In response to a subpoena, discovery request,* or other lawful process, that is *not accompanied by an order of a court* or administrative tribunal, if:
>
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

(Emphasis added.)

The trial court is correct that the Secretary created exceptions to HIPAA's general prohibition on the disclosure of plaintiff's protected health information and that some of those exceptions are listed in 45 C.F.R. § 164.512(e). The trial court, however, erred in its application of 45 C.F.R. § 164.512(e)(1) to this case because the plain and ordinary language of 45 C.F.R. § 164.512(e)(1) does not authorize the disclosure of protected health information during a meeting in which an attorney, without express authorization of the patient, has *ex parte* communications with a physician.

Stated another way, 45 C.F.R. § 164.512(e)(1) permits a health care provider to disclose otherwise protected health information *"in the course of any judicial or administrative proceeding "* if that disclosure is in response to (i) an order of a court, or (ii) in response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court. (Emphasis added). Thus, by the express language of 45 C.F.R. § 164.512(e)(1), the covered entity's disclosure must occur "in the course of" a "judicial proceeding," and it must be made in response either to a formal process, whether in the form of a court order, discovery request or other lawful process.

■ The meaning of a term can vary depending on the context of its use. For instance, when a statute in question fails to provide a statutory definition, and there is no case law interpreting the term in the context of the statute, then the Court presumes that the term is used according to its plain and ordinary meaning. The term "judicial proceeding" would be commonly understood to refer to a case filed in a judicial forum. "In the course of" a judi-

cial proceeding, thus, would be commonly understood to include matters that occur while a case is pending in a judicial forum. This is consistent with the dictionary definition of "in the course of," which defines "in the course of" as (1) "undergoing the specified process ... (2) during the specified period ... (3) during and as part of the specified activity." THE NEW OXFORD AMERICAN DICTIONARY 389 (2nd ed.2005). The dictionary may be used to derive the plain and ordinary meaning of a term. *Tendai v. Mo. Bd. of Registration for the Healing Arts,* 161 S.W.3d 358, 366 (Mo. banc 2005) (*overruled on other grounds* ).

In the context of defamation, however, the phrase "judicial proceedings" has been interpreted more broadly because of the nature of the privilege involved. *Roberson v. Beeman,* 790 S.W.2d 948, 950 (Mo.App. 1990), held that a demand letter sent before trial was considered within judicial privilege because "published in the course of a judicial proceeding." *See also Pape v. Reither,* 918 S.W.2d 376, 381 (Mo.App. 1996) (settlement letter sent before trial is within judicial proceedings for purposes of the judicial privilege against defamation).

By contrast, the Missouri legislature, for purposes of a criminal statute, defined "judicial proceeding" narrowly as "any official proceeding in court, or any proceeding *authorized by or held under the supervision of a court* [.]" § 575.010(4), RSMo Supp. 2009 (emphasis added).

BLACK'S LAW DICTIONARY 122 (5th ed.1979) (citation omitted) defines "authorize" as:

[t]o empower, to give a right or authority to act. To endow with authority or effective legal power, warrant, or right. To permit a thing to be done in the future. It has mandatory effect or meaning, implying a direction to act.

"Authorized" is sometimes construed as equivalent to "permitted"; or "direct-

ed," or to similar mandatory language. Possessed of authority; that is, possessed of legal or rightful power, the synonym of which is "competency."

BLACK'S LAW DICTIONARY defines "supervision" as "[a]n act of occupation of supervising; inspection." *Id.* at 1290. It also defines "supervise" as "[t]o have general oversight over, to superintend or to inspect." *Id.*

While neither HIPAA nor its regulations expressly define "in the course of" or "judicial proceeding," or expressly state whether the term should be given its common, narrow or broad legal definitions, a narrow definition is implicit in HIPAA's regulatory requirement in 45 C.F.R. § 164.512(e)(1) that a covered entity may make disclosures only pursuant to a court order or subpoena, discovery request, or other lawful process. The Secretary has stated that this means that:

In § 164.512(e) of the final rule, we permit covered entities to disclose protected health information *in a* judicial or administrative proceeding if the request for such protected health information is made through or pursuant to an order from a court or administrative tribunal or in response to a subpoena or discovery request from, or other lawful process by a party to the proceeding.

Standards for Privacy of Individually Identifiable Health Information, 65 Fed.Reg. 82462, 82529 (Dec. 28, 2000) (emphasis added). In other words, such disclosure must be under the supervisory authority of the court either through discovery or through other formal court procedures.

This regulation does not itself authorize any additional process or procedure for obtaining a court order, subpoena, or other lawful process; that is left to the rules in

the individual states.[7] In this context, under Missouri's civil procedure rules, the trial court has the authority and oversight over: (1) pretrial motion proceedings and trial (*i.e.*, official proceedings in court) and (2) formal discovery (*i.e.*, proceedings authorized by or held under the supervision of a court). *State ex rel. Norman v. Dalton*, 872 S.W.2d 888, 891 (Mo.App.1994).

None of these rules authorizes an order directing or authorizing a physician to engage in *ex parte* communications. Missouri case law is clear that while Missouri law has not prohibited a party from engaging in voluntary *ex parte* communications with a treating physician, the trial courts have never supervised these communications nor exercised authority over them, and the trial courts have not had authority to compel a plaintiff to expressly authorize *ex parte* discussions with her physician. *Brandt I*, 856 S.W.2d at 661; *Woytus*, 776 S.W.2d at 392. Further, the trial courts had no authority to force a physician, over his own objection, to engage in informal *ex parte* discussions with an attorney during discovery. *Brandt I*, 856 S.W.2d at 662.

Given Missouri's law on the subject of *ex parte* physician communications, the meeting at which *ex parte* communications occur is not a judicial proceeding because the trial court has no general oversight of the meeting or any control over it.[8] Thus, 45 C.F.R. § 164.512(e), which permits disclosures in the course of judicial proceedings, does not apply to a meeting for *ex parte* communications, and consequently, a trial court has no authority to issue a purported HIPAA order advising the plaintiff's nonparty treating physicians that they may or may not participate in informal discovery via *ex parte* communications.

In both *Brandt* opinions, this Court reiterated its conclusion that a plaintiff cannot be compelled by a trial court to sign an authorization consenting to *ex parte* communications with his treating physicians in favor of defendants or their attorneys. The rationale for the holdings of the *Brandt* opinions is particularly relevant to this Court's resolution of this case today:

> [T]his court will not require that a nonenumerated discovery method be added to those already available under the

---

7. As a result, various courts in other states presented with the issue of whether *ex parte* interviews of treating physicians are permissible in personal injury and medical malpractice cases after the enactment of HIPAA come to different conclusions. For example:

(1) The Michigan Supreme Court permitted defense counsel in a medical malpractice case to seek *ex parte* interviews with plaintiffs treating physicians, but Michigan had a specific statute authorizing this procedure. Mich. Comp. Laws § 600.2912f (2000); *Holman v. Rasak*, 785 N.W.2d 98, 486 Mich. 429 (2010).

(2) The Georgia Supreme Court, without reference to any rules of discovery, simply relied upon the language in HIPAA regarding qualified protective orders and "public policy" to hold that a trial court could enter a narrowly-drawn protective order to allow an *ex parte* interview of a treating physician in a medical malpractice case. *Baker v. Wellstar Health Sys., Inc.*

(3) The New Jersey Superior Court permitted the *ex parte* interviews with plaintiff's treating physicians by ordering plaintiff to sign an authorization permitting such interviews. But, the authorization was to clearly indicate that the physician's participation was voluntary. Additionally, any interview was required to be recorded and transcribed and a copy of the transcript provided to plaintiff's counsel. *Diet Drug Litigation v. Wyeth, Inc.*, 384 N.J.Super. 546, 895 A.2d 493 (2005).

8.

In reaching our conclusion, we stop short of enthusiastically endorsing the idea that a physician should freely engage in ex parte discussions regarding a patient's condition. When a doctor engages in ex parte communications with a patient's adversaries, there is a risk that the disclosure will exceed the bounds of the waiver of the privilege. 856 S.W.2d at 674–75.

[Missouri Rules of Court]. Information or evidence that can be obtained legitimately through *ex parte* discussion [with treating physicians] can also be obtained through the methods of discovery listed in the [Missouri Rules of Court]. Any burdens caused defendants by being restricted to the specially enumerated discovery procedures are outweighed by the potential risks to the physician-patient relationship in deviating from those procedures.

*Woytus,* 776 S.W.2d at 395.

The rules of discovery enumerated by this Court are found at Rules 56 to 61. These rules provide the trial court discretion to issue orders relating to the perimeters of interrogatories, depositions, production of documents, requests for admission, physical and mental examinations, and discovery sanctions. The defense in this case concedes that there is no discoverable information that they could obtain from an informal *ex parte* discussion with the treating physician that they could not obtain by use of these rules of discovery. However, there is nothing in these rules of discovery that authorizes the trial court to issue orders governing methods of *informal ex parte* communications with plaintiff's nonparty treating physicians.

Likewise, there is no regulation in the HIPAA framework that authorizes a trial court in Missouri to issue an order permitting a physician to divulge a patient's protected health information outside the confines of a judicial proceeding over which the trial court has direct supervision thereof. Compliance with HIPAA and this Court's rules of discovery will ensure the disclosure of the health information and at the same time limit the potential liability of a treating physician who was prompted to provide protected health information.[9] The treating physician in this case can comply with HIPAA by not giving an *ex parte* interview without an authorization and also comply with Missouri common law by choosing not to grant the *ex parte* interview.[10]

### Conclusion

In the instant case, by issuing a purported *formal* order that was directed to nonparty medical providers and, essentially, providing an advisory opinion to said nonparty medical providers about the trial court's understanding of the law on *informal ex parte* communications, the trial court exceeded its authority, and the preliminary writ of prohibition is made permanent.

All concur.

---

9. Of note, a health care provider who, in violation of the HIPAA privacy rule, unlawfully obtains or discloses individually identifiable protected health information can be fined up to $50,000 or imprisoned for up to one year, or both. *See* 42 U.S.C.A. § 1320D–6.

10.

    If either the state law or HIPAA (or both) is permissive, that is, at least one of the statutes allows a particular action but does not compel it, then the statutes are not contrary under the impossibility and obstacle tests. For example, if a state law permits ex parte interviews and HIPAA allows them if certain procedures are followed, then a covered entity could be in compliance with both statutes by either not engaging in ex parte discussions at all (since neither statute compels them), or by engaging in them after satisfying HIPAA's procedural requirements. Since there are no impediments to complying with both HIPAA and the state law, the statutes are not contrary under the impossibility test, and the state law is not an obstacle to HIPAA compliance.

*Cohen,* at 1140 (internal citations omitted).